David W. MARTIN, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES; Law Enforcement Officers Union Council 82, AFSCME AFL—CIO; Dominic Mantello; William J. Connolly; Carol Nuite; and Robert Vanderbeck, Defendants.

No. 99–CV–1364 RFT.

United States District Court, N.D. New York.

Sept. 26, 2002.

Agreement, to add an additional claim against National Union. National Union may object to such a request.

Deily, Dautel & Mooney, LLP, Albany, New York (Susan S. Dauetel, of counsel), for plaintiff.

Hon. Eliot Spitzer, Attorney General for the State of New York, Litigation Bureau, The Capitol, Albany, New York (Risa L. Viglucci, Assistant Attorney General, Gerald J. Rock, Assistant Attorney General, of counsel), for DOCS, Mantello, Connolly, Nuite and Vanderbeck.

Hite & Savitt, P.C., Albany, New York (Robert S. Hite, of counsel), for Council 82.

## MEMORANDUM–DECISION
## AND ORDER

TREECE, United States Magistrate Judge.

Plaintiff David W. Martin ("Martin") brought this civil action for damages against the New York State Department of Correctional Services ("DOCS"), Dominic Mantello, William J. Connolly, Carol Nuite and Robert Vanderbeck ("State Defendants") as well as Law Enforcement Officers Union Council 82, AFSCME AFL—CIO ("Council 82") for sexual discrimination and retaliation, conspiracy to discriminate, violation of equal protection and breach of duty of fair representation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("HRL"), N.Y.Exec.Law § 296 and 42 U.S.C. §§ 1983 and 1985(3). *See* Am.Compl. (Docket No. 15). The parties have consented to have the assigned U.S. Magistrate Judge conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c) and N.D.N.Y.L.R. 72.2. Docket No. 31.

By memorandum decision and order dated June 30, 2000, U.S. Magistrate Judge Ralph W. Smith, Jr., granted Council 82's motion for summary judgment as to Martin's claims for sexual discrimination, conspiracy to discriminate and for breach of duty of fair representation with respect to grievances C97–0582, C97–0882 and the Notice of Discipline. Docket No. 33. Therefore, the remaining claims are: (1) sexual discrimination against the State Defendants; (2) retaliation against both the State Defendants and Council 82; (3) violation of equal protection against the State Defendants; and (4) breach of the duty of fair representation with respect to grievances C97–0583, C97–0797, C98–1038 and C99–0302 against Council 82.

Presently pending are the State Defendants and Council 82's motions for summary judgment pursuant to Fed.R.Civ.P. 56(b). Docket Nos. 59 & 72, respectively. Martin opposes both motions. Docket Nos. 69 & 83. Oral argument was heard on September 10, 2002, at the James T. Foley U.S. Courthouse, Room 319, in Albany, New York. Decision was reserved. For the reasons that follow, the State Defendants' motion is granted and Council 82's motion is granted.

## I. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. Fed.R.Civ.P. 56(e); *see also Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998).

## II. State Defendants' Motion
## for Summary Judgment

### A. Background

Martin has been employed by DOCS at Coxsackie Correctional Facility ("Coxsack-

ie") since 1992. *See* Am.Compl., ¶ 12. Beginning approximately six months after the commencement of his employment at Coxsackie, Martin, a homosexual male, was routinely harassed by his co-workers. Martin Aff. (Docket No. 68), ¶ 15. Given the span of years Martin alleges the conduct took place, specific events are discussed in greater detail as they relate to the causes of action. Generally, however, Martin's co-workers constantly directed offensive and degrading sexual comments toward him, such as "pervert," "fucking faggot," "cock-sucker," "fudge-packer," and "you gay bastard." *Id.* at ¶ 6. The conduct by co-workers was not limited to offensive comments. Martin's co-workers also left sexually explicit pictures in his work area and written statements and pictures on the restroom walls, yard booths, his time card and his interoffice mail. On one occasion, a co-worker bared his chest, grabbed his nipple and asked Martin, "Hey Martin, like what you see?" *Id.* Martin further alleges that despite his complaints to his supervisors and union, the conduct got worse and he was retaliated against for filing complaints.

### B. Immunity from Suit

As an initial matter, the State Defendants contend that several claims are barred under Eleventh Amendment immunity and/or N.Y.Correct.Law § 24. Specifically, DOCS contends that the claims brought against it under section 1983 and the HRL are barred by the Eleventh Amendment. Similarly, the individual State Defendants contend that Martin's claim brought pursuant to the HRL's aider and abettor clause, codified at N.Y.Exec. Law § 296(6), is barred by the Eleventh Amendment. Finally, the individual State Defendants contend that Martin's claims brought pursuant to the HRL are barred by N.Y.Correct.Law § 24.

### 1. DOCS and the Eleventh Amendment

■ The Eleventh Amendment bars suit in federal court by a citizen of a state against a state or its agencies, unless the state has waived immunity to suit, *see Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), or Congress has abrogated that state's immunity. *See Quern v. Jordan,* 440 U.S. 332, 343–44, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *see also Farricielli v. Holbrook,* 215 F.3d 241, 244–45 (2d Cir.2000). It is well settled that the Eleventh Amendment bars claims against DOCS brought pursuant to section 1983. *See Bryant v. New York State Dep't of Corr. Serv. Albany,* 146 F.Supp.2d 422, 425–26 (S.D.N.Y.2001) (discussing at length the line of cases holding that the Eleventh Amendment bars suits against the state agencies). Therefore, Martin's claims against DOCS brought pursuant to section 1983 are dismissed.[1]

■ Similarly, courts within this district have held that claims against the state or its agencies brought in federal court pursuant to the HRL are barred by the Eleventh Amendment. *See Hayut v. State Univ. of N.Y.,* 127 F.Supp.2d 333, 340 (N.D.N.Y.2000); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551, 558 (N.D.N.Y.1999). Accordingly, Martin's claims against DOCS brought pursuant to the HRL are dismissed.

### 2. Individual State Defendants and the Eleventh Amendment

The seventh cause of action in the amended complaint seeks damages against

---

1. To the extent the individual State Defendants are named in their official capacities, such suit is deemed to be one against the state itself and is also barred by the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998).

the individual State Defendants pursuant to the HRL, N.Y.Exec.Law §§ 296(1)(a) and (6). Am.Compl. (Docket No. 15), ¶ 58. To the extent this claim is brought pursuant to section 296(6), the individual State Defendants contend it is barred by the Eleventh Amendment.

■ Section 296(6) states that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." Under New York law, "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 293 (S.D.N.Y.1999) (citing *Murphy v. ERA United Realty*, 251 A.D.2d 469, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)). The individual State Defendants contend that since the employer/principal is entitled to immunity, Martin cannot satisfy this requirement for his aider and abettor claim. In essence, the individual State Defendants are asking for the immunity afforded to DOCS to be extended to them.

In support of their contention, the individual State Defendants cite a line of cases where the court dismissed a plaintiff's aider and abettor claim against his or her co-workers where there was no evidence in the record that the employer was involved in the discrimination. *See DeWitt*, 48 F.Supp.2d at 293; *Hicks v. International Bus. Mach.*, 44 F.Supp.2d 593, 600 (S.D.N.Y.1999). The courts, however, dismissed the claims on the merits, not on the grounds of immunity. Indeed, the individual State Defendants do not cite, and the Court's independent research did not find, one case where a HRL aider and abettor claim was dismissed against individual defendants on Eleventh Amendment immunity grounds. While Martin is barred from recovering from DOCS, he is not barred from establishing that DOCS, through its agents, aided, abetted, incited, compelled or coerced Martin's co-workers into harassing or retaliating against him. As creative as defense counsel's argument is, this Court will not extend the holdings in this line of cases to the facts here.

Accordingly, the State Defendants' motion for summary judgment on this ground is denied.

### 3. N.Y.Correct.Law § 24

The individual State Defendants also contend that Martin's HRL claims are barred by N.Y.Correct.Law § 24.

■ "It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ierardi v. Sisco*, 119 F.3d 183, 186 (2d Cir.1997); *Baker v. Coughlin*, 77 F.3d 12, 14–15 (2d Cir.1996). The purpose of section 24 immunity is to "permit correction officers to perform the demanding task of maintaining [prison] safety and security . . . 'undeterred by the fear of personal liability and vexatious suits . . . .' " *Id.* at 187 (quoting *Arteaga v. State*, 72 N.Y.2d 212, 532 N.Y.S.2d 57, 63, 527 N.E.2d 1194 (1988)). Therefore, section 24 immunity is available in both state and federal courts and applies to conduct that violates the employer's regulations or that is beyond the employee's authority. *Id.*

■ The Second Circuit has held that alleged sexual harassment by co-workers does not entitle correctional officers to section 24 immunity because such conduct is not undertaken in the discharge of his or her duties. *Id.* at 188. The individual State Defendants do not contend, and the Court sees no reason why, the Second Circuit's reasoning should not also apply to claims of retaliation.

Accordingly, the individual State Defendants' contention is rejected.

### C. Statute of Limitations

The State Defendants also contend that Martin's Title VII, HRL and section 1983 claims are barred by the applicable statutes of limitations. It is well settled and the parties do not dispute that the applicable statute of limitations period for Martin's HRL and section 1983 claims is three years. *See Warren v. Altieri*, No. 01 CIV 3635, 2002 WL 334463, at *2 (S.D.N.Y. Mar.1, 2002) (section 1983 claim governed by New York's three-year statute of limitations) (citing *Connolly v. McCall*, 254 F.3d 36, 40–41 (2d Cir.2001)); *Hansen v. Danish Tourist Bd.*, 147 F.Supp.2d 142, 156 (E.D.N.Y.2001) (statute of limitations for HRL is three years) (citing *VanZant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996); N.Y.C.P.L.R. 214(2)).

The State Defendants contend that any claim for sexual discrimination or retaliation under Title VII that occurred prior to 180 days of Martin filing his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is barred by the statute of limitations. *See* State Def.Mem. of Law (Docket No. 65), p. 8. It is well settled that in New York, an employee alleging employment discrimination under Title VII must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct. *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir.1999) ("An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency."). Thus, the applicable limitations period here is 300 days.

Martin filed his discrimination charge with the EEOC on June 1, 1999. *See* Rock Decl. (Docket No. 67), Ex. B. Thus, as a general matter, only those incidents of alleged discriminatory or retaliatory conduct that occurred on or after August 5, 1998, are timely under Title VII and only those incidents of alleged discriminatory are retaliatory conduct that occurred on or after June 1, 1996, are timely under the HRL and section 1983. Martin does not dispute that many of the allegations fall outside the applicable statute of limitations. Rather, Martin contends that all alleged discriminatory conduct should be considered under the continuing violation doctrine.

▮▮▮ Under the continuing violation doctrine, "if a Title VII plaintiff files an EEOC charge that is timely to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993). The State Defendants contend that since Martin cannot point to a policy or mechanism of discrimination, he is not entitled to bootstrap events that occurred prior to August 5, 1998. Indeed, the *Lambert* decision, relied upon by the State Defendants, held that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.*

Martin, however, relies on the Second Circuit's decision in *Fitzgerald v. Henderson*, 251 F.3d 345, 363 (2d Cir. 2001). In *Fitzgerald*, the Second Circuit held that the continuing violation doctrine was applicable where the plaintiff complained of a "constant stream" and "no interruption" in the alleged discriminatory conduct. 251 F.3d at 363. At first glance, it would appear as if *Lambert* and *Fitzgerald* are inapposite to one another. After a thorough comparison, however, the two cases are distinguishable. *Lambert* in-

volved the timeliness of isolated and unrelated instances of employment decisions, such as, the promotion of a male employee over female employees. 10 F.3d at 53. *Fitzgerald*, on the other hand, involved allegations of a hostile work environment where the plaintiff alleged that she was subjected to almost daily abuse over a 2½–year period. 251 F.3d at 363.

Moreover, the Supreme Court recently addressed the issue of the applicability of the continuing violation doctrine in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). While the parties did not have the benefit of *Morgan* at the time they filed their briefs, the Court applied the same distinction between hostile work environment claims and claims involving discrete acts of discrimination that distinguishes *Lambert* and *Fitzgerald.* 122 S.Ct. at 2070–72. The Court reasoned that the trigger of the statute of limitations for claims of hostile work environment does not occur "on any particular day," but "over a series of days or perhaps years." *Id.* at 2073. Thus, the Court held that the statute of limitations is satisfied for a hostile work environment claim as long as the plaintiff files "a charge within [300] days of any act that is part of the hostile work environment." *Id.* at 2075. Accordingly, the continuing violation doctrine is applicable to Martin's claims of a hostile work environment.

Nonetheless, the *Morgan* Court specifically held that "[a] discrete retaliatory or discriminatory act 'occurred'" for purposes of the statute of limitations "on the day that it 'happened.'" 122 S.Ct. at 2070. Thus, the acts of retaliation alleged by Martin are only timely under Title VII if they occurred on or after August 5, 1998, and only timely under the HRL if they occurred on or after June 1, 1996. Martin alleges three incidents of retaliation: (1) increased harassment by co-workers; (2) suspension of his weapon privileges and confiscation of his personal off-duty firearm; and (3) loss of annual leave and wages.

With regard to the incidents of increased co-worker harassment, Martin alleges that his co-workers physically assaulted him, falsely accused him of stealing DOCS property and refused him backup during an inmate brawl. For determining the timeliness of these allegations, it is assumed that these allegations are "sufficiently severe" to constitute an adverse employment action. First, Martin alleges three incidents of physical assault. The three physical assaults occurred in sometime in 1995 (Martin Dep. (Docket No. 67), pp. 164–65), sometime between December 1992 and December 1994 (*id.* at p. 841) and sometime in 1999 (*id.* at pp. 830–33). Only this final allegation in which Martin alleges his co-workers handcuffed him to the arsenal window is timely under Title VII and the HRL. Second, Martin alleges that on three separate occasions he was falsely accused of stealing DOCS property. *Id.* at pp. 201–08. Specifically, Martin alleges that he was accused of stealing a turkey breast, a box of chicken patties and two pairs of handcuffs. The record is unclear when the allegations of stealing the turkey breast and chicken patties occurred. Thus, for purposes of summary judgment, they are deemed timely under both Title VII and the HRL. The accusation that Martin stole two pairs of handcuffs, however, occurred sometime around March of 1996. Thus, this incident is not timely under either Title VII or the HRL. Finally, Martin alleges that he was refused backup during an inmate brawl. This incident occurred in mid–1994 (*id.* at pp. 737–42). Thus, this incident is untimely under both Title VII and the HRL.

With regard to the suspension of Martin's weapon privileges and confiscation of his personal off-duty firearm, the acts occurred from August 1996 to May 1997. Martin Aff., ¶¶ 25–31. Therefore, they cannot be considered for purposes of Martin's claim for retaliation under Title VII, but are timely under the HRL. Martin also alleges that Nuite harassed and retaliated against him with respect to his time and attendance matters. Specifically, Martin alleges that Nuite routinely and arbitrarily refused to accept his medical documentation as evidence of illness or injury. *Id.* at ¶¶ 32–40. Martin further alleges that two months after he filed a grievance against Nuite, she issued a Notice of Discipline against Martin, which included a fine of $1,000.00 and loss of ten (10) days annual leave. *Id.* at ¶ 36; Martin Dep (Docket No. 67, Ex. A), p. 678. Since these events occurred between June 1997 and March 1998, they are untimely for purposes of Martin's retaliation claim under Title VII, but are timely under the HRL.

### D. Sexual Discrimination Claims

Martin alleges that he was subjected to sexual discrimination in violation of Title VII and the HRL. It is well settled that claims brought under the HRL are evaluated under the identical standard as claims brought under Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1988). Accordingly, the Court evaluates Martin's claims of sexual discrimination under federal and state statutes simultaneously with reference to federal law.

Title VII makes it "unlawful for an employer ... to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(*l* ). Encompassed in this language is a prohibition of sexual harassment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). A plaintiff seeking relief for sexual harassment may proceed under a theory of, *inter alia,* a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Martin is proceeding under such a theory.

To state a hostile work environment claim, a plaintiff must establish that the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Harris,* 510 U.S. at 21, 114 S.Ct. 367. This requires a showing that the conduct was both objectively and subjectively offensive, i.e., that a reasonable person would find the conduct hostile or abusive and that the victim, in fact, perceived the conduct as such. *Id.* at 21–22, 114 S.Ct. 367. Finally, to determine whether the alleged conduct was sufficiently severe or pervasive, courts must examine "all the circumstances," including the "frequency ...; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367.

Title VII prohibits both sexual harassment between men and women as well as same-sex sexual harassment. *See Oncale v. Sundowner Offshore Serv.,* Inc. 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). For purposes of Title VII, however, the courts have interpreted sex to mean gender and, thus, it is well settled in this circuit that harassment on the basis of sexual orientation is not actionable under Title VII. *Simonton v. Runyon,* 232 F.3d 33, 35–36 (2d Cir.2000). Indeed, Martin does not dispute that he may not proceed under the theory that he was ha-

rassed based upon his sexual orientation. Rather, Martin contends that he is proceeding under the theory of impermissible sexual stereotyping.

■ In *Price Waterhouse v. Hopkins*, the Supreme Court held that "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has [impermissibly] acted on the basis of gender." 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). From this holding, courts have held that "a man can ground a claim [under Title VII] on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir.1999); *see also Centola v. Potter*, 183 F.Supp.2d 403, 409 (D.Mass.2002) (collecting cases). Indeed, the Second Circuit in dicta held that "a suit [by a man] alleging harassment ... based upon nonconformity with sexual stereotypes is cognizable under Title VII as discrimination because of sex...." *Simonton*, 232 F.3d at 38.

In *Simonton*, the Second Circuit upheld the district court's dismissal of a plaintiff's sexual harassment claim where his co-workers "repeatedly assaulted him with such comments as 'go fuck yourself, fag,' 'suck my dick,' and 'so you like it up the ass?'" 232 F.3d at 35. Similar to Martin's claims here, the plaintiff in *Simonton* also alleged that

> [n]otes were placed on the wall in the employees' bathroom with [plaintiff's] name and the name of celebrities who had died of AIDS. Pornographic photographs were taped to his work area, male dolls were placed in his vehicle, and copies of Playgirl magazine were sent to his home. Pictures of an erect penis were posted in his work place, as were posters stating that [plaintiff] suffered from mental illness as a result of 'bung hole disorder.'

*Id.* The Second Circuit held that these facts failed to demonstrate impermissible sexual stereotyping. *Id.* at 38. Specifically, the court held "[w]e do not have sufficient allegations before us to decide [plaintiff's] claims based on stereotyping because we have no basis in the record to surmise that [plaintiff] behaved in a stereotypically feminine manner and that the harassment he endured was, in fact, based on his non-conformity with gender norms instead of his sexual orientation." *Id.*

■ Here, Martin's affidavit is devoid of any statement that he acts in an effeminate manner. The record also fails to demonstrate any evidence that Martin acts, or is even perceived to act, in an effeminate manner. The only allegation which possibly supports a claim of impermissible gender stereotyping is Martin's statement that homosexual female correction officers are treated in a more favorable manner and are, in fact, "considered competent, dependable and 'cool.'" Martin Aff., ¶ 11. This statement, however, assumes too much. "[N]ot all homosexual men are stereotypically feminine, and not all heterosexual men are stereotypically masculine." *Simonton*, 232 F.3d at 38. Thus, to avoid bootstrapping sexual orientation claims under Title VII, a plaintiff must demonstrate the he does not, or at the very least is not perceived to, act masculine. Martin's comparison to homosexual female correction officers does not meet this requirement.[2]

Moreover, Martin has failed to demonstrate that "the harassment he endured

**2.** The affidavits submitted in support of this contention are also insufficient. The affidavits fail to identify the homosexual female correctional officers and only make conclusory statements about possible perceptions at Coxsackie.

was, in fact, based on his non-conformity with gender norms instead of his orientation." *Id.* The torment endured by Martin, as reprehensible as it is, relates to his sexual orientation. The name-calling, the lewd conduct and the posting of profane pictures and graffiti are all of a sexual, not gender, nature. At oral argument, Martin's counsel argued that it is difficult to determine where gender ends and sexual orientation begins. Counsel also argued that these issues cannot be compartmentalized. However, district courts have held that in order to survive summary judgment on the facts such as those presented here, the conduct must be aimed at masculinity or perceived lack thereof. *Compare Trigg v. New York City Transit Auth.*, 99–CV–4730, 2001 WL 868336, at *6 (S.D.N.Y. July 26, 2001) (granting summary judgment where homosexual plaintiff was called, *inter alia,* fagot and faggot ass) *with Centola*, 183 F.Supp.2d at 410 (denying summary judgment where co-workers "placed a picture of Richard Simmons 'in pink hot pants' in [plaintiff's] work area"). There is no evidence in the record that the conduct was aimed at Martin's masculinity, or perceived lack thereof.

Accordingly, the State Defendants' motion for summary judgment as to Martin's claims for sexual discrimination under Title VII and the HRL is granted.

### E. Retaliation Claims

Martin alleges that he was retaliated against for complaining of sex discrimination. Martin alleges the retaliatory conduct included 1) increased harassment by co-workers; 2) suspension of his weapon privileges and confiscation of his personal off-duty firearm; and 3) loss of time and wages.

Title VII and the HRL prohibit employers from retaliating against employees for complaining about employment discrimination. *See* 42 U.S.C. § 2000e(3)(a);

N.Y.Exec.Law § 296(1)(e). Retaliation claims are analyzed under the familiar McDonnell–Douglas burden shifting analysis. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996). Thus, Martin must first demonstrate a prima facie case of retaliation. If Martin makes this showing, the State Defendants must state a non-discriminatory reason for the employment action. Finally, Martin must then establish that the State Defendants' proffered reason is a mere pretext for retaliation. The State Defendants move for summary judgment on the ground that Martin has failed to establish a prima facie claim for retaliation. Thus, for purposes of this motion, the Court only needs to examine the first prong of the McDonnell–Douglas test.

■■ To establish a prima facie claim of retaliation, a plaintiff must demonstrate that 1) he or she was engaged in activity protected by Title VII or the HRL that the employer was aware of; 2) the employer took an adverse action against the plaintiff; and 3) a causal connection between the protected activity and the adverse action. *See Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir.1998). Here, the State Defendants contend that Martin failed to establish any of the elements with respect to his claim of increased harassment by co-workers and has failed to establish the first and third elements with respect to his claims of retaliatory suspension of this weapon and loss of time and wages.

### 1. Protected Activity

■■ To satisfy the first element, a plaintiff need not show that the opposed conduct actually violated either Title VII or the HRL, but rather that he or she reasonably and in good faith believed that it did. *Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998). Whether the plaintiff's belief

was reasonable is viewed in light of the totality of the circumstances. *Id.* Thus, Martin must show that he reasonably and in good faith believed that he was participating in an activity protected by Title VII and the HRL.

■ The State Defendants contend that because sexual orientation is not protected under Title VII and such has been the law in the Second Circuit since 1986, Martin could not have reasonably and in good faith believed he was engaged in protected activity. In Council 82's first motion for summary judgment, Judge Smith discussed this issue. Judge Smith concluded that there was a sufficient basis in the record to demonstrate that Martin reasonably believed that the union was committing an unlawful employment practice. *See* Docket No. 33, p. 10. Similarly here, "[i]t is clear from the exhibits submitted ... that [Martin] felt that he was being discriminated against on the basis of his sexual orientation and that these feelings were relayed to [the State] Defendants." *Id.; see also* Martin Aff., Ex. B (July 20, 1998 memorandum from Martin to Mel Brown regarding hostile work environment based on sexual orientation); Ex. C (March 27, 1995 letter to supervisors regarding sexual harassment; June 20, 1998 sexual harassment complaint). The State Defendants have not even proffered a reason, and this Court sees none, as to why there should be any deviation from Judge Smith's conclusion.

Moreover, the State Defendants contend that because it has been well settled in the Second Circuit since 1986 that sexual orientation is not protected by Title VII, Martin must have known his activity was not protected. There is no evidence in the record, however, that Martin, a lay person, was aware of Second Circuit case law. The State Defendants have also failed to proffer any reason why such knowledge should be imputed to non-lawyers. Accordingly, the State Defendants' contention is rejected and Martin has established the first element of his prima facie case.

**2. Adverse Employment Action**

■ The State Defendants contend that Martin cannot establish the second element, adverse employment action, with respect to his allegation of increased co-worker harassment. Specifically, the State Defendants contend that co-worker harassment is not an adverse employment action. The Second Circuit, however, has held that "retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second [element] of the retaliation prima facie case." *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 446 (2d Cir.1999). To determine whether conduct is sufficiently severe, the analysis is similar to that used to determine whether conduct is an adverse employment action. *See id.* at 446. A Plaintiff must "endure[ ] a 'materially adverse change' in the terms and conditions of employment.'" *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Richardson,* 180 F.3d at 446)). Further, the "change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks and citation omitted). Here, the only timely allegations of increased co-worker harassment are that Martin was falsely accused of stealing a turkey breast and box of chicken patties and that his co-workers handcuffed him to the arsenal window.

■ With regard to the false allegations of stealing, Martin was accused on two separate occasions of stealing first a turkey breast and then a box of chicken patties. *See* Martin Dep., pp. 201–07. Martin was required to write a memo to

his supervisors regarding what happened. *Id.* No other action was taken. This is not sufficiently serious to constitute an adverse employment action. *See, e.g., Loiola v. New York State Attorney General Medicaid Fraud,* No. 00 CV 4907, 2002 WL 1552070, at *9 (S.D.N.Y. June 21, 2002) (holding that claims that plaintiff was physically threatened is insufficient). By contrast, Martin alleges that his co-workers handcuffed him to the arsenal window. This harassment is sufficient to satisfy this element. *See, e.g., Richardson,* 180 F.3d at 446–47 (allegations that retaliatory harassment included manure in plaintiff's parking space, hair in her food, a rubber band shot at her and scratches on her car).[3]

### 3. Causal Connection

■ "A causal connection may be established either '*indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant.' " *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991) (quoting *DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111, 115 (2d Cir.1987)) (citations omitted) (emphasis in original); *see also Reed,* 95 F.3d at 1178. Martin contends that the record establishes discriminatory animus by the State Defendants.

### a. Retaliatory Harassment

■ As discussed above, the only incident of retaliatory harassment that is both timely and sufficiently severe is Martin's allegation that two co-workers handcuffed

him to the arsenal window. The incident took place for approximately ten (10) minutes during a shift change so most of the correctional officers leaving Coxsackie could see Martin handcuffed to the window. Martin Dep., p. 832. There is no evidence in the record that Martin complained about these two officers prior to this instance. Martin testified at his deposition that he believed this conduct was discriminatory and not retaliatory. *Id.* at p. 833. Indeed, this conduct appears to have been the only specific allegation made against Officers Cornelius and Canasary. Thus, there is no causal connection between Martin's protected activity and the conduct of Cornelius and Canasary.

Moreover, Martin admits that he did not report this incident to either his supervisors or any of the named defendants. *Id.* at p. 837. Indeed, Martin did not report many of the incidents he alleges to have been retaliatory harassment. Thus, there is insufficient evidence to impute liability to the named defendants. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257 (1998).

Accordingly, the State Defendants' motion for summary judgment on this ground is granted.

### b. Suspension of Weapon Privileges

In August 1996, Martin was feeling stressed and anxious, so he requested a few days off work. Martin Aff., ¶ 23. When his partner called work and realized Martin was not there, Martin's partner filed an "attempt to locate" report with the Town of Colonie Police Department. *Id.* at ¶ 24. The police department contacted Coxsackie personnel. *Id.* Martin returned

---

**3.** The State Defendants include in their brief other reasons why this second element has not been satisfied. These reasons are better considered under the causal connection element.

to work two days later. *Id.* at ¶ 25. Upon his return, Captain Belarge ordered Martin to surrender his weapon and informed him that his weapon privileges were suspended. *Id.* Martin's weapon privileges and firearm were not restored and returned for approximately eleven (11) months.

■ Martin contends that the record demonstrates retaliatory animus in the suspension of his weapon privileges and the confiscation of his personal firearm. Specifically, Martin points to another correctional officer who threatened to commit suicide by shooting himself. This correctional officer's weapon privileges were suspended, but despite the more serious threat to personal safety, his privileges were restored in the same time period as Martin's, i.e., eleven (11) months. Joslin Aff. (Docket No. 78), Ex. O. Martin also states in his affidavit that there are other correctional officers who were required to take time off from work due to stress, domestic violence problems or serious workplace incidents, but that they were not required to relinquish their personal weapons. Martin Aff., ¶ 28. Evidence of disparate treatment is sufficient to establish a causal connection. *See Johnson v. Palma,* 931 F.2d at 207.

■ The State Defendants contend, however, that none of the named defendants were involved in the incident nor was restoration of Martin's privileges and return of his weapon within their control. Indeed, Martin alleges that his privileges were suspended and his weapon confiscat-

ed at the direction of defendant Vanderbeck. The record, however, establishes that Vanderbeck was not on duty when the events occurred and the suspension was issued by Captain Belarge. *See* Vanderbeck Aff. (Docket No. 62), ¶ 18 & Ex. A. Martin makes some references to the fact that he believes Captain Belarge called Vanderbeck about the incident. Such conclusory allegations, however, is insufficient. Thus, Martin has not established that Vanderbeck was involved.[4]

Martin also alleges that it took him longer to get his privileges restored and his firearm returned than other correctional officers. The record demonstrates, however, that is the Office of Labor Relations that determines how long weapon prohibitions stand. Martin then alleges that Coxsackie personnel failed to act on his behalf. The record demonstrates otherwise. First, Martin failed to do anything to vacate the weapons prohibition until January 20, 1997. Further, Martin failed to officially rescind his "consent" to the prohibition until February 12, 1997.[5] Second, the record establishes that whenever Martin sought the rescission of the prohibition, defendants Nuite, Connolly and Mantello referred the matter to the appropriate DOCS personnel. It was the Office of Labor Relations that denied Martin's request.

Finally, Martin alleges that other correctional officers whose privileges were suspended were provided counseling while he was not. Martin further alleges that

---

4. Vanderbeck retired from Coxsackie on October 24, 1996. Vanderbeck Aff., ¶ 20. Thus, to the extent Martin alleges that Vanderbeck was involved in the continued suspension of privileges or confiscation of his weapon, such allegation lacks merit.

5. The State Defendants also contend that Martin consented to the weapon suspension

therefore, he cannot claim his privileges were suspended in retaliation for his protected activity. At oral argument, however, Martin argued that he consented only because Captain Belarge threatened to seek rescission of his firearm permit. This raises a question of fact regarding Martin's "consent."

this was in violation of DOCS policy. Martin has, however, failed to point to any DOCS policy that requires counseling when correctional officers' weapons privileges are suspended. Further, the State Defendants deny the existence of such policy. Therefore, Martin's allegation is not supported by the record.

Accordingly, the State Defendants' motion for summary judgment on this ground is granted.

### c. Time and Attendance Matters

 Martin contends that defendant Nuite subjected him to discrimination and harassment with respect to the processing and handling of his time and attendance matters. While the allegations that constitute harassment are not actionable, Martin alleges that two months after he filed a grievance against Nuite, she issued a Notice of Discipline, which resulted in a fine of $1,000 and the loss of ten (10) days of annual leave. This short time period can establish a causal connection. *See Manoharan v. Columbia Univ.*, 842 F.2d 590, 593 (2d Cir.1988). Nonetheless, where, as here, the adverse employment action occurred over "an extensive period of progressive discipline," temporal proximity alone is insufficient. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 94 (2d Cir.2001) (quotation marks omitted).

The record here establishes that Martin was placed on time and attendance monitoring in 1995. Nuite did not begin her employment with Coxsackie until 1996. Thus, Martin's problems with his attendance began long before Nuite was his supervisor. Further, the record demonstrates that DOCS attempted progressive discipline prior to issuing the Notice of Discipline. In fact, Martin was warned and counseled that he had an attendance

problem prior to the issuance of the Notice of Discipline. Finally, Nuite issued the Notice, but it was an independent arbitrator who upheld the disciplinary action as well as the fine and loss of annual leave. Under such circumstances, temporal proximity alone is insufficient to establish a causal connection.

Accordingly, the State Defendants' motion for summary judgment on this ground is granted.[6]

### F. Equal Protection Claims

Martin contends that the individual State Defendants violated the Equal Protection Clause of the Fourteenth Amendment. The State Defendants move for summary judgment on the grounds of lack of personal involvement, failure to state a cause of action and qualified immunity. Martin assumed that this Court would agree with the individual State Defendants that they are entitled to Eleventh Amendment immunity on this claim and failed to brief the merits of this issue in his papers. Therefore, this Court provided Martin ample time to address his equal protection claim during oral argument.

 Generally, the Equal Protection Clause requires government entities to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Latrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir.1999). To state an equal protection violation, a plaintiff must demonstrate: (1) that he or she was selectively treated compared to similarly situated persons; and (2) the selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or gender or to punish or inhibit the exercise of a constitutional right. *See Crowley*

---

**6.** The State Defendants alternatively contend that Martin's claims are barred by res judicata. In light of the foregoing, such contention need not be addressed.

v. Courville, 76 F.3d 47, 52–53 (2d Cir. 1996).

■ "Discrimination based on a suspect or quasi-suspect classification such as race, alienage, ethnicity, or gender is subject to heightened constitutional scrutiny." Petrosky v. New York State Dep't. of Motor Vehicles, 72 F.Supp.2d 39, 60 (N.D.N.Y.1999) (collecting cases). Where, as here, the classification is not based on a suspect or quasi-suspect class nor implicates a fundamental constitutional right, the challenged conduct is analyzed under the rational basis test. F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Under this test, the classification does not violate equal protection "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (collecting cases).

■ With respect to Martin's claim that Nuite arbitrarily denied his medical documentation and other time and attendance matters, Martin has not pointed to a similarly situated employee who was treated differently. Therefore, Martin has failed to establish an equal protection claim.

■ With respect to Martin's claim that his weapons privileges were suspended and his personal firearm confiscated in violation of equal protection, Martin has pointed to a similarly situated person who was treated differently. The State Defendants, however, contend that Martin has failed to establish the personal involvement of any of the named defendants. It is well settled that a prerequisite to an award of damages for any constitutional tort, requires a plaintiff to demonstrate the personal involvement of each named defendant. Moffitt v. Town of Brookfield,

950 F.2d 880, 886 (2d Cir.1991). In essence, there is no respondeat superior liability in section 1983 actions. See Dumpson v. Rourke, No. 96 CV 621, 1997 WL 610652, at *7 (N.D.N.Y. Sept. 26, 1997) (Pooler, J.) (citing Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)). Therefore, a supervisory official may be personally involved only where the official (1) directly participated in the alleged violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) either created or continued an unconstitutional policy, custom or practice; or (4) was grossly negligent in managing the subordinates who caused the violation. Williams v. Smith, 781 F.2d 319, 323–24 (1986), accord, Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994) (citations omitted).

As noted above, the weapon suspension was issued by Captain Belarge. Once issued, it was the Office of Labor Relations, not any of the named defendants, that determined how long the suspension would last. Furthermore, the named defendants forwarded Martin's requests for rescission of the suspension to the appropriate personnel and Mantello called the Office of Labor Relations on Martin's behalf. Thus, there was no personal involvement of any of the named defendants.

■ With respect to Martin's claim that he was subject to a hostile work environment based on his sexual orientation in violation of equal protection, courts within this circuit are recognizing such a cause of action. See Emblen v. Port Auth. of N.Y./ N.J., No. 00 CIV. 8877, 2002 WL 498634, at *3 (S.D.N.Y. Mar.29, 2002); Quinn v. Nassau County Police Dep't, 53 F.Supp.2d 347, 357–58 (E.D.N.Y.1999). In fact, the State Defendants do not contest that Martin may state such a claim. Rather, the State Defendants contend that Martin has

failed to allege the personal involvement of either Connolly or Mantello. Indeed, the record demonstrates that Martin never complained about the hostile work environment to Mantello. *See* Martin Dep., pp. 74–75; Mantello Aff. (Docket No. 63), ¶ 12. In regard to Connolly, the only incident of co-worker harassment about which Martin complained to Connolly was the conduct by Lieutenant Klein. Apparently, Klein has, on several occasions, called Martin "fucking stupid" and a "fucking idiot." Martin Aff., ¶ 16. This conduct is not sexual in nature and Martin concedes that he never told Connolly that he is a homosexual, Martin Dep., p. 77, nor is there any evidence in the record that Connolly knew of Martin's sexual orientation otherwise. Thus, there is no evidence in the record that Connolly or Mantello were aware of the hostile work environment.

Finally, in his memorandum of law, Martin consents to the dismissal of his claim for conspiracy to discriminate against the State Defendants. *See* Docket No. 69, p. 2. The State Defendants do not object to the dismissal. In light of Martin's consent and for substantially the same reasons stated in Judge Smith's memorandum decision and order, Martin's claim for conspiracy to discriminate pursuant to 42 U.S.C. § 1985(3) is dismissed.

Accordingly, the State Defendants' motion for summary judgment on this ground is granted.[7]

### III. Council 82's Motion for Summary Judgment

#### A. Background

The facts on Council 82's motion for summary judgment are not materially in dispute. The facts referred to in this section are taken directly from Martin's Response to Defendant Council 82's Statement of Material Facts. *See* Docket No. 82. Where the parties do disagree, the Court accepts the facts alleged by Martin for purposes of the motion. Moreover, the specific allegations against Council 82 are discussed in greater detail below as they relate to the claims. It is, however, useful to have an overview of the collective bargaining agreement in effect during the relevant time period.

Council 82 is a subordinate body charted by the American Federation of State, County and Municipal Employees ("AFSCME"). During the relevant time period, AFSCME Local 1264 was the local union, charted and established by AFSCME, whose members included correction officers at Coxsackie Correctional Facility. From 1995 to May 24, 1999, Council 82 was the certified bargaining representative for the Security Services bargaining unit of New York State employees. Effective May 24, 1999, Council 82 was decertified as the bargaining agent for the Security Services bargaining unit. Council 82 was replaced as bargaining agent by the New York State Correctional Officers and Police Benevolent Association, Inc. ("NYSCOPBA").

During the relevant time period, there was a collective bargaining agreement ("CBA") in effect that, *inter alia*, established procedures for processing both contract grievances and disciplinary matters. The contract grievance procedure provided for a four step procedure in processing contract grievances where an employees claimed violations of the CBA. Step 1 of the grievance procedure involves the filing of a written grievance by the union shop stewards, a subsequent Step 1 meeting

---

**7.** The State Defendants alternatively move for summary judgment on the ground of qualified immunity. In light of the foregoing and since the amended complaint also seeks declaratory relief, the issue of qualified immunity need not be addressed.

between the facility management, the grievant and the Local Union and a resulting Step 1 response from facility management. An unsatisfactory Step 1 response could be referred to Step 2 upon the written request of the certified bargaining agent.

At Step 2 of the grievance procedure, Council 82 representatives and DOCS meet at the facility to discuss the grievance and the DOCS representative renders a written Step 2 response. An unsatisfactory response can be referred to Step 3 upon the written request of the certified bargaining agent. At Step 3 of the grievance procedure, representatives of the certified bargaining agent and the Governor's Office of Employee Relations ("OER") meet to discuss the grievance and then the OER representative renders a written Step 3 response. An unsatisfactory Step 3 response can be referred to an Alternative Dispute Resolution Process ("ADR"). The ADR process utilizes the services of a master arbitrator who convenes a resolution conference to hear scheduled grievances and, when appropriate, renders written awards. Individual grievants are allowed to participate in the ADR resolution conference by telephone.

During the relevant time period, the disciplinary procedures required that disciplinary charges against an employee be instituted by means of personal delivery or through registered or certified mail service of a written Notice of Discipline. Where the employee disputed the disciplinary charges or the proposed penalty, the employee or Council 82 could file a written disciplinary grievance. After a disciplinary grievance was filed, the employee or Council 82 could request a meeting with a DOCS representative in order to discuss the Notice of Discipline. If the matter was not resolved through this meeting, the employee or Council 82 could file a written

demand for arbitration, in which a disciplinary arbitrator would be mutually selected to convene an arbitration hearing. At the hearing, the arbitrator would hear proof and arguments. Following the hearing, the arbitrator would render a binding award by which he or she would make a determination of guilt or innocence and the appropriateness of the proposed penalty. This is the final step in the disciplinary procedure.

### B. Breach of the Duty of Fair Representation

■ To establish a claim for breach of the duty of fair representation, a plaintiff must establish two elements. *See Barr v. United Parcel Serv., Inc.,* 868 F.2d 36, 43 (2d Cir.1989), *accord Samuels v. Air Transport Local 504,* 992 F.2d 12, 16 (2d Cir.1993). First, the plaintiff must demonstrate that the union's conduct was "arbitrary, discriminatory or in bad faith." *Barr,* 868 F.2d at 43 (citing *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). Second, the plaintiff must demonstrate that the union's acts or omissions "seriously undermine[d] the arbitral process." *Id.* (citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).

### 1. Grievances C97–583 and C98–797 and Disciplinary Grievance D98–0436

■ On or about January 30, 1997, Martin filed grievance C97–0583, which complained of (1) the harassing and abusive treatment of Lieutenant Klein; (2) the placement on "Leave Without Pay" for a day that Martin was attending a DOCS training seminar; and (3) the placement on "Leave Without Pay" for days that Martin provided acceptable medical documentation. Martin alleges that he was denied assistance from Council 82 in the drafting of this grievance. In fact, Council 82 rep-

resentatives refused to draft or file the grievance, remarking, "Your claims are stupid, come back when you lose your job."

A Step 1 hearing was conducted and a written decision was rendered. Only after Martin made repeated requests to expedite this grievance on March 18, 1997, was the grievance moved to Step 2. There is some dispute as to what occurred next, but Martin contends that Chet LaDuke closed this grievance without Martin's consent and that Martin was not invited to attend the hearing. When Martin learned of this disposition in November 1997, he immediately demanded that the matter be reopened. By letter dated November 18, 1997, Council 82 referred the grievance to Step 3. On December 5, 1997, OER denied the grievance at Step 3. On December 24, 1997, Council 82 filed an arbitration demand. On October 23, 1998, an ADR hearing was held. Council 82 contends that Martin participated by telephone and consented to the master arbitrator placing C97–0583 on hold pending the outcome of the disciplinary matters D98–0436 and D98–045. Martin contends that he was unaware of the hearing and did not participate in it nor did he consent to placing the grievance on hold pending the outcome of the disciplinary matter.

Martin filed grievance C98–0797 on or about January 21, 1998. The grievance raised the following issues: (1) the discriminatory application of DOCS time and attendance rules and regulation; (2) sexual harassment and discrimination based on "what people think" of Martin; (3) the conduct of Nuite and Lieutenant McDermott; (4) the unwarranted rejection of Martin's medical notes; and (5) the confidentiality of medical documentation at Coxsackie. A Step 1 hearing was conducted and a decision was rendered and delivered to the Local Union. On or about May 28, 1998, Council 82 requested Step 2 review of the grievance. A Step 2 hearing was conducted and on or about June 16, 1998, a written decision was issued denying the grievance. By letter dated June 23, 1998, Council 82 referred the grievance to Step 3. On or about July 8, 1998, OER issued an unfavorable decision. On July 28, 1998, Council 82 filed an arbitration demand for the grievance. On October 23, 1998, an arbitration hearing was held without the notification or participation of Martin. Martin also disputes Council 82's assertion that he consented to the master arbitrator placing this grievance on hold pending the outcome of the disciplinary matter.

The disciplinary matter D98–0436 was Martin's challenge to his Notice of Discipline issued as a result of his Absences Without Leave. Following the filing of this disciplinary grievance, a meeting was conducted between Martin, a Council 82 representative and a DOCS representative. The matter was not resolved because Martin contends that Chet LaDuke would not permit him to offer any evidence to disprove the charges. Regardless of the reason, Council 82 requested arbitration. At the arbitration hearing, Martin was represented by a Council 82 representative. Martin fully explained his argument to the arbitrator and provided documentation in support of his position. Martin testified at his deposition that he felt a strong case had been presented on his behalf. On November 3, 1998, the arbitrator issued a written decision determining that Martin was guilty of the charges and that the proposed penalty of a $1,000 fine was appropriate.

Following resolution of D98–0436, a second hearing was held on June 27, 2000, regarding C97–0583 and C98–0797. At this point, Council 82's successor NYSCOPBA was Martin's representative and a different master arbitrator presided over

the hearing. On July 11, 2000, the master arbitrator issued a written decision in which he stated that C97–0583 had been withdrawn by NYSCOPBA because it had been rendered moot by the decision in D98–0436. Based upon this record, there is no material fact in dispute that demonstrates that the arbitration process was undermined by Council 82. Even assuming the facts asserted by Martin are true, there was a second hearing and Martin was provided an opportunity to present his case. Further, it was NYSCOPBA who withdrew C97–0583.

## 2. Grievances C98–1038 and C99–0302

On June 10, 1998, Martin filed grievance C98–1038, which complained that Martin was harassed and discriminated against by his employer by disciplining him regarding his time and attendance record. The grievance also sought restorations of lost benefits and dismissal of his Notice of Discipline. A Step 1 hearing was conducted and the grievance was denied. On July 7, 1998, Council 82 requested Step 2 review of the grievance. A Step 2 hearing was conducted and on September 1, 1998, Council 82 request Step 3 review of C98–1038. On June 14, 1999, OER issued a decision denying the grievance. When the Step 3 decision was rendered, Council 82 had been decertified and divested of any authority to further process the grievance. Martin contends, however, that Council 82 had a duty to turn over all grievance files to its successor, NYSCOPBA. Council 82 failed to turn over the file regarding this grievance and it was dismissed for lack of documentation.

Similarly, on February 16, 1999, Martin filed grievance C99–0302, which complained about the scope or substance of the medical documentation that he was required to submit following an absence in February 1999. A Step 1 hearing was conducted and a decision was rendered denying the grievance. On March 9, 1999, Council 82 requested Step 2 review of the grievance. A Step 2 hearing was conducted and on April 1, 1999, a decision was rendered denying the grievance. On April 6, 1999, Council 82 requested Step 3 review of the grievance. On May 13, 1999, OER issued a decision denying the grievance. On May 19, 1999, Council 82 received the decision denying the grievance. While the time to file a demand for arbitration was pending, Council 82 was decertified. OER and NYSCOPBA agreed to stay any time limits for filing an arbitration demand with respect to this grievance until NYSCOPBA has an opportunity to evaluate the grievance. Martin contends that Council 82 failed to turn over to NYSCOPBA the file for C99–0302 and the grievance was dismissed for lack of documentation.

Council 82 contends, and Martin does not refute, that only those files that were requested by NYSCOPBA were turned over. Apparently, NYSCOPBA did not request these files. Furthermore, the record demonstrates that there was some confusion in the copying and delivering of the files. *See generally* Morris Aff. (Docket No. 84). Thus, the record demonstrates that any failure to turn over the files was mere negligence. Mere negligence does not amount to a breach of the duty of fair representation. *See Lettis v. United States Postal Serv.,* 39 F.Supp.2d 181, 203 (E.D.N.Y.1998). Finally, the record demonstrates that when Council 82 received a copy of the Step 3 decision denying grievance C99–0302, a copy was mailed to Martin. Whether Martin actually received a copy is irrelevant. Since it was decertified as the bargaining agent shortly after mailing Martin a copy, Council 82 fulfilled its obligations when it mailed the decision.

Accordingly, Council 82's motion for summary judgment on this ground is granted.

### C. Retaliation Claims

Both Title VII and the HRL make it unlawful for a labor union to retaliate against a member. 42 U.S.C. § 2000e–3(a); N.Y.Exec.Law § 296(1)(e). These claims are also analyzed under the *McDonnell–Douglas* burden shifting analysis discussed above. Council 82 moves for summary judgment on the ground that Martin has failed to establish a prima facie case. Thus, the only issue is whether Martin has established that (1) he was participating in protected activity that was known to the union; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Badlam v. Reynolds Metals Co.,* 46 F.Supp.2d 187, 204–05 (N.D.N.Y.1999) (McAvoy, C.J.) (citations omitted).

██ Specifically, Council 82 contends that the conduct complained of by Martin either did not involve a Council 82 employee or does not result in an adverse employment action attributable to Council 82. Indeed, many of the allegations involve the refusal of shop stewards to draft and file grievances. Council 82 contends and Martin does not dispute that it is the elected officers of AFSCME Local Union 1264 (Local 1264) who held the responsibility for drafting, filing and processing the grievances through Step 1. McMillan Aff. (Docket No. 85), ¶¶ 4, 6. Local 1265 is a separate organization governed by its own constitution. *Id.* at ¶ 4. Thus, Martin's allegations that the shop stewards refused to draft and file grievances as well as made offensive comments cannot be imputed to Council 82. Nonetheless, Martin also alleges that Council 82 failed to properly represent him in retaliation for his complaints. Specifically, Martin alleges

that Council 82's failures or omissions resulted in the unwarranted confiscation and retention of his personal firearm; the lapse of time in appealing grievance; imposition of the $1,000 fine and loss of annual leave; dismissal of grievance C98–1038; and failure to address the merits of grievances C97–0583 and C98–0797.

#### 1. Confiscation of Personal Weapon

Martin alleges that Council 82 failed to represent him when he was questioned by Captain Belarge. Martin, however, admitted that he never requested union representation. Martin Dep., pp. 370–73. The record further demonstrates that when Council 82 learned of the confiscation, a representative spoke to various facility supervisors on Martin's behalf. LaDuke Dep. (Docket No. 87, Ex. D), pp. 89, 91, 126, 146, 169. Finally, Council 82 processed grievances C97–0582 and C97–0882, involving the confiscation of Martin's personal firearm, through arbitration. On February 2, 1998, the arbitrator found both grievances to be moot because the weapon had been returned. Therefore, Martin has not established that Council 82 failed to act on his behalf with regard to the confiscation and retention of his personal firearm.

Accordingly, Council 82's motion for summary judgment on this ground is granted.

#### 2. Failure to Timely File Appeals

Martin alleges that Council 82 failed to timely file a demand for arbitration with respect to grievance C99–0302 and to appeal the disciplinary decision.

With regard to grievance C99–0302, a Step 3 decision denying the grievance was received by Council 82 on May 19, 1999. Council 82 affirms that it mailed a copy of the decision to Martin on the same day. Robitalille Aff. (Docket No. 86), ¶ 9. Martin

states that he never received a copy.[8] Effective May 24, 1999, Council 82 was decertified and any request for arbitration had to be made by either NYSCOPBA or Martin. NYSCOPBA never requested the file for this grievance from Council 82, therefore, it was never forwarded. Regardless, OER agreed to stay any time limitations regarding the grievance until NYSCOPBA could evaluate the claim. NYSCOPBA never requested arbitration. Thus, the failure to timely request arbitration was not the result of conduct by Council 82. With regard to the disciplinary decision, Council 82 processed the appeal to arbitration. No further action was required of Council 82.

Accordingly, Council 82's motion for summary judgment on this ground is granted.

### 3. Disciplinary Penalty

Martin alleges that the disciplinary action was sustained because of Council 82's failure to adequately represent him. The record demonstrates that Council 82 processed the Notice of Discipline through arbitration. At arbitration, Martin was permitted to present documentary evidence. This evidence was rejected by the arbitrator. Thus, Martin's allegation that his appeal was denied because of a failure by Council 82 is wholly conclusory.

Accordingly, Council 82's motion for summary judgment on this ground is granted.

### 4. Dismissal of Grievance C98–1038

 Martin alleges that Council 82 failed to forward to NYSCOPBA his files regarding C98–1038, thus, he was denied arbitration of this matter. The record,

however, demonstrates that Council 82 received a copy of the Step 3 decision denying Martin's grievance in June 1999. Since Council 82 had already been decertified, it sent a copy of the decision to NYSCOPBA and Martin. NYSCOPBA did not request this file, therefore Council 82 did not forward it. No further action was required of Council 82. Therefore, any adverse action that occurred was not the result of any conduct or omission by Council 82.

Accordingly, Council 82's motion for summary judgment on this ground is granted.

### 5. Merits of C97–0583 and C98–0797

 Martin alleges that due to failures and/or omissions by Council 82, an arbitrator did not decide the merits of grievances C97–0583 and C98–0797. Both grievances involved time and attendance matters as well as allegations of harassment. Martin alleges that C97–0583 was closed without his permission[9] and that the first hearings involving these grievances were held without his knowledge or presence. There is also a dispute whether Martin consented to placing these grievances on hold pending the outcome of the disciplinary matter. These disputes are not material because a second hearing was held regarding these grievances. Thus, even assuming Martin did not consent to the closing of C98–0583, and was not present at the first hearings nor consented to staying the grievances, Martin did not suffer any adverse employment action. Martin eventually got his proverbial day in court. Furthermore, the grievances were eventually withdrawn by NYSCOPBA. Thus, if there were still outstanding issues in these grievances, it was

---

8. Martin cannot refute that a copy was sent to him. It is also worth noting that Martin produced a copy of the decision to Council 82 during the discovery process. Hite Aff. (Docket No. 87), ¶¶ 3 & 4.

9. The grievance was subsequently reopened and processed through to arbitration.

the duty of NYSCOPBA to process such issues.

Finally, Martin appears to contend that Judge Smith determined that an adverse employment action was established because of the degrading comments made by Council 82 representative and because the disparate treatment of Martin by his co-workers can, under certain circumstances, be imputed to the union. Judge Smith, however, considered this evidence in determining that Martin had established the third element of a prima facie case. Council 82 admits that its representative made an offensive remark and that the offending attorney was reprimanded and a new attorney was assigned to process Martin's grievances. There is no evidence in the record that either attorney failed to properly handle Martin's grievances.[10]

Accordingly, Council 82's motion for summary judgment on this ground is granted.

**WHEREFORE,** for the foregoing reasons it is hereby

**ORDERED** that the State Defendants' motion for summary judgment (Docket No. 59) is **GRANTED;**

**ORDERED** that Law Enforcement Officers Union council 82, AFSCME AFL—CIO's motion for summary judgment (Docket No. 72) is **GRANTED;** and it is

**ORDERED** that the Clerk of the Court enter judgment on behalf of **ALL DEFENDANTS** and close the file.

**IT IS SO ORDERED.**

---

**10.** At oral argument, Martin's counsel argued that this new attorney had only recently been admitted to the bar and therefore, a more experienced attorney should have handled Martin's grievances. This argument has no basis in law and the attorney's representation was adequate. Therefore, this argument is rejected.