09-3183-cv
Fleming v. Maxmara USA, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of March, two thousand ten.

Present:
> RALPH K. WINTER
> ROBERT A. KATZMANN,
> > *Circuit Judges*,
> JED S. RAKOFF,
> > *District Judge*.[*]

_____

YVONNE FLEMING,

> *Plaintiff-Appellant*,

v.                                                            No. 09-3183-cv

MAXMARA USA, INC., LUIGI CAROGGIO, JOHN GLEESON,

> *Defendants-Appellees*.

_____

For Plaintiff-Appellant:          DENISE K. BONNAIG, Bonnaig & Associates, New York, NY

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

For Defendants-Appellants:        HOLLIS GONERKA BART (Chaya F. Weinberg-Brodt, Alyssa N. Koerner, *on the brief*), Withers Bergman, LLP, New York, NY

Appeal from the United States District Court for the Eastern District of New York (Sifton, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Yvonne Fleming appeals from a judgment of the United States District Court for the Eastern District of New York (Sifton, *J.*) granting summary judgment to Defendants-Appellees and dismissing Fleming's discrimination and retaliation claims. Fleming alleged that defendants discriminated against her on the basis of her race by terminating her and by creating a hostile work environment, and retaliated by terminating her for complaining that defendants treated American employees differently than Italian employees by terminating her. We assume the parties' familiarity with the facts, procedural history, and scope of the issues presented on appeal.

Both Fleming's discrimination and retaliation claims related to her termination are analyzed using the burden-shifting paradigm articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (applying to retaliation claims). To establish a prima facie case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) circumstances surrounding that action give rise to an inference of discrimination. *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002). To establish a prima facie case of Title VII retaliation, a plaintiff must show (1) participation in a protected activity known to the defendant, (2) an employment action disadvantaging the plaintiff, and (3) a causal

connection between the protected activity and the adverse employment action. *Id.*

Fleming's discriminatory termination claim fails because she cannot show the fourth element of her prima facie case—that the circumstances surrounding her termination give rise to an inference of discrimination. *See Collins*, 305 F.3d at 118. While a plaintiff may usually satisfy this element by showing that she was replaced by someone not in her protected class, *see Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001), Fleming was replaced by another black female, Lisa Derrick. Fleming argues that Derrick was hired to disguise defendants' discriminatory act, but Fleming fails to point to any admissible evidence to support this assertion. Further, while Fleming points to cases concluding that where a plaintiff is replaced with a member of her protected class *after* the filing of a discrimination charge might suggest a cover-up, *see, e.g.*, *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534-35 (11th Cir. 1984); *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 964 (5th Cir. 1981), here Derrick was hired at the same time that Fleming was fired, *before* Fleming took any legal action against defendants.

Fleming's retaliatory termination claim fails because, even if she can show a prima facie case of retaliation, defendants have put forth a legitimate, non-discriminatory reason for her termination, and Fleming has not responded with facts sufficient to warrant a reasonable jury finding by a preponderance of the evidence that "the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for [retaliation]." *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 125 n.11 (2d Cir. 2008). Defendants state that Fleming was terminated because they perceived a need to upgrade her position, and because of their perception that Fleming's "inappropriate, insensitive, or otherwise disproportionate conduct towards other employees had demonstrated . . . that she lacked the judgment needed for the role." Fleming contends that these reasons are pretextual because they

-3-

are false—she disputes that her behavior was ever inappropriate and asserts that by hiring Derrick defendants did not upgrade her position.

Fleming's arguments do not demonstrate that MaxMara's purported reason for terminating her was pretextual. Her disagreement with defendants over whether her behavior was inappropriate does not show that their stated reasons for terminating her were not their true reasons. Fleming's email to Haddock alone supports defendants' assertion that she behaved inappropriately and unprofessionally. Therefore, even if the facts are in dispute about the inappropriateness of other incidents, she cannot demonstrate that defendants' proffered reasons for her termination were so unfounded that a reasonable jury could conclude that they "were not the defendant[s'] true reasons, but rather a pretext." *Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir. 1988). Nor does her disagreement with defendants' assertion that they upgraded her position by hiring Derrick establish pretext. Derrick, unlike Fleming, possessed a college degree, and, more importantly, "it is not the function of a fact-finder to second-guess business decisions." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability."). Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual. *See Dister*, 859 F.2d at 1116. That is not the case here.

Further, while the temporal proximity between the meeting at which Fleming claims to have complained of unequal treatment of American and Italian employees and her termination may be sufficient to satisfy the third element of her prima facie case, it is insufficient on its own to demonstrate that defendants' legitimate, non-discriminatory explanation for her termination was pretextual. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir. 1998)

-4-

(concluding that plaintiff's facts were sufficient to warrant a finding of pretext where there was other circumstantial evidence of pretext in addition to a strong temporal connection).

Fleming's hostile work environment claim fails because she cannot demonstrate that her "workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted). Fleming alleges that Gleeson made a racially harassing comment to her early in her tenure at MaxMara and followed it by numerous incidents of unfair treatment. "[W]hether an environment is 'hostile or abusive' can be determined only by looking at all the circumstances." *Id*. at 23. "For racist comments, slurs, and jokes to constitute a hostile work environment, there [generally] must be more than a few isolated incidents of racial enmity . . . ." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal citation and quotation marks omitted). However, "even a single episode of harassment, if severe enough, can establish a hostile work environment." *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds by Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Here, Fleming puts forth evidence of only one incident that is plainly motivated by race—defendant Gleeson's 2001 comment. Viewing the facts in the light most favorable to Fleming and drawing all inferences in her favor, while this comment may be seen as severe, it is isolated and, standing alone, is not the type of "intolerable alteration" of her working conditions that substantially interferes with her ability to do her job. *Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008). Instead, we have found a hostile work environment only where such a racially-harassing comment is one of many racially-motivated comments. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (concluding that a similar

racially harassing comment sufficiently demonstrated a hostile work environment where it was part of a "stream of racially offensive comments" including a "veritable barrage of racial epithets"). Fleming does not allege any fact to connect this comment to her other allegations of unfair treatment, which are not facially related to her race. Moreover, her other allegations are generally quite minor—she alleges that defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her. These incidents do not support a finding of a hostile work environment that is pervasive or severe. *See Harris*, 510 U.S. at 21.

The fact that Fleming cannot connect these other incidents of unfair treatment to Gleeson's comment also dooms her claim under the New York City Human Rights Law. While that law does not require the same severity or pervasiveness that federal law requires, *see Williams v. N.Y. City Housing Auth.*, 872 N.Y.S.2d 27, 31, 38 (App. Div. 1st Dept. 2009), it does contain a three-year statute of limitations, *see* N.Y. City Admin. Code § 8-502(d). Gleeson's comment was made well outside of this statute of limitations, and Fleming does not provide evidence of any racially-motivated acts within the three-year statute of limitations.

We have considered the remainder of Fleming's arguments and conclude that they lack merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED.**

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

-6-