**Carola BOZA–MEADE, Plaintiff,**

v.

**ROCHESTER HOUSING AUTHORITY, Defendant.**

6:14–CV–6356 EAW

United States District Court,
W.D. New York.

Signed March 21, 2016

Carola Boza–Meade, Webster, NY, pro se.

Scott P. Rogoff, Hiscock & Barclay LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

*Pro se* Plaintiff Carola Boza–Meade ("Plaintiff") brings this action against the Rochester Housing Authority ("Defendant" or "RHA"), alleging violations of Title VII of the Civil Rights Act of 1964. (Dkt. 1). Presently before the Court is Defendant's motion to dismiss Plaintiff's

complaint. (Dkt. 7). For the following reasons, Defendant's motion is granted, and Plaintiff's complaint is dismissed in its entirety.

### BACKGROUND

Plaintiff alleges that she was first hired by Defendant on December 11, 2006. (Dkt. 1 at 2). Plaintiff was originally employed in Defendant's Leasing Operations Department until 2010, when she applied for a transfer to work as a "clerk III w/ typing" in the maintenance department. (*Id.* at ¶¶ 2–3). Plaintiff contends that she interviewed with Steve Lattuca and David Rose for that position in May 2010. (*Id.* at 4). At that time, Mary Lyons, assistant to Mike Gallo, also served as a clerk III w/ typing in the maintenance department. (*Id.* at ¶ 6). Plaintiff contends that Ms. Lyons informed her that there was not enough work in the maintenance department for two clerks, but that Ms. Lyons worked overtime on Saturdays. (*Id.* at ¶¶ 7–8). Plaintiff further contends that Ms. Lyons offered Anna Baez, a white employee, the opportunity to work with her. (*Id.* at ¶ 8).

In June 2010, Plaintiff alleges that Michael Gallo was appointed Acting Director of Human Resources, and Ms. Lyons was promoted to "clerk I/confidential." (*Id.* at ¶ 9). Plaintiff began working as a clerk III w/ typing in the maintenance department.

Plaintiff alleges that she was not treated fairly while working in the maintenance department. For example, Plaintiff contends that Adam Sutherland sent her "belittling emails" and that this conduct continued until she was transferred from the department. (*Id.* at ¶ 10). Plaintiff also alleges that she was asked to help others with their job responsibilities, most of the new work responsibilities were assigned to her, or at times she did not have enough work to complete. (*Id.* at ¶¶ 12–14, 23–24,

29, 31, 34, 47). Plaintiff further contends that she left work on short-term disability on two occasions due to stress she experienced in her new department. (*Id.* at ¶¶ 20–22, 54).

During June 2011 through the fall of 2011, Plaintiff alleges that she began working with Greg Gilman to help assist with the inventory process. (*Id.* at ¶ 23). Plaintiff maintains that she "was never reimbursed for mileage." (*Id.*). Plaintiff also contends that Mr. Gilman "stood her up" and she discontinued working with him. (*Id.* at ¶ 24).

Plaintiff further contends that she was blamed for her co-worker's failure to submit timely invoices, and accused of "creating work orders ... then taking up to 2 weeks to send the follow-up paperwork." (*Id.* at ¶¶ 15, 18–19). Plaintiff also contends that her co-workers mocked and taunted her. For example, Plaintiff contends that on September 22, 2011, Greg Gilman, Greg Babcock, and Daryl Dillon came into her office to retrieve paintings, and said "[l]et's hurry to take these paintings out of here before Carola takes them home." (*Id.* at ¶ 27). Similarly, Plaintiff contends that in the fall of 2011, as she was leaving her employer's property, Mark Hill told the security guard "make sure that no one leaves w/ RHA's property" as Plaintiff exited the door. (*Id.* at ¶ 28).

Plaintiff maintains that in late 2012, a couch in her office that she used during her lunch breaks was removed by Mike Gallo and Shaw Burr, and that in the process of moving it, they almost knocked her in the head, and others laughed. (*Id.* at ¶ 40).

On June 25, 2012, Plaintiff attended a meeting with several co-workers. (*Id.* at ¶ 32). Plaintiff was told at the meeting that work order reports she prepared contained incorrect data. (*Id.*). Plaintiff contends that co-worker Janice Steimer said,

"soon that wouldn't matter anyway." (*Id.*).

Plaintiff contends that during the summer of 2012, equipment and tools were stolen from a place called Parliament Arms. (*Id.* at ¶ 35). Plaintiff further alleges that on September 17, 2012, and September 18, 2012, Mike Gallo invited Plaintiff to visit different zones with him to identify improvements needed on certain sites. (*Id.* at ¶ 36). Plaintiff declined Mr. Gallo's invitation to lunch. (*Id.*).

On February 20, 2013, while she was on vacation, Plaintiff contends that Anna Baez called, and informed her that Mike Gallo wanted Plaintiff to come in for Mary Lyons' birthday. (*Id.* at ¶ 41). Plaintiff alleges that when she returned to her office on February 25, 2013, a new mail machine, which emitted a strong chemical smell, had been installed. (*Id.* at ¶ 42).

In February 2013, Plaintiff contends that she was called into Mike Gallo's office with Greg Gilman and Mary Lyons, where she was told that everyone would be trained to work as back-ups on the mail machine, but that "all of them" were "grinning and laughing." (*Id.* at ¶ 48).

Plaintiff maintains that on September 16, 2013,[1] she was transferred to the procurement department after layoffs. (*Id.*). Plaintiff contends that she still had to "go back and forth upstairs to do the mail and flip the phones during the day . . . ." (*Id.*). Plaintiff maintains that her new supervisor in the procurement department was Kathy Short, from whom she received "limited trainings." (*Id.* at ¶ 49).

Plaintiff met with Anne Wambach in October 2013, to discuss her transfer to the procurement department and the reasons for the same. (*Id.* at ¶ 50).

Plaintiff further alleges that Harolda Wilcox and "her buddies" began "making comments around [Plaintiff's] office door," and when Plaintiff was working in the mail machine area. (*Id.* at ¶ 51). For example, on November 15, 2013, Harolda Wilcox said "she's fired" as she passed through the mail area. (*Id.* at ¶ 52). Plaintiff further alleges that Daryl Dillon glared at her and made comments about her personal life. (*Id.* at ¶ 53). Plaintiff alleges that she was taken out on short-term disability on April 10, 2014. (*Id.* at ¶ 54).

Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") on November 15, 2013. (*Id.* at 19–23). In her charge, Plaintiff alleges that she was discriminated against on the basis of (1) national origin ("Panama City, Panama") and (2) Race/Color Ethnicity ("Black Hispanic"). (*Id.* at 20). Plaintiff alleged that the acts of discrimination consisted of her employer harassing or intimidating her ("other than sexual harassment"), and giving her worse/different duties than workers in her same title. (*Id.* at 21).

Following the filing of her NYSDHR complaint. Plaintiff met with NYSDHR Investigator Adjaero. (*Id.* ¶ at 55). Investigator Adjaero allegedly encouraged Plaintiff to drop her complaint, and advised Plaintiff that she could re-file it "if something else came up." (*Id.*). Plaintiff alleges that she opted to continue with her complaint. (*Id.*).

Plaintiff's administrative charge elaborates that Mary, her immediate supervisor, did not want to work with her; she was

---

1. Plaintiff actually alleges in her complaint that she was transferred to the procurement department on September 16, 2014. (Dkt. 1 at ¶ 48). However, Plaintiff filed her NYSDHR complaint on November 15, 2013 (*id.* at 15), which she alleges occurred after her transfer (*id.* at ¶¶ 48–55). Accordingly, it appears that Plaintiff meant to allege that she was transferred to the procurement department in September 2013.

not permitted to work overtime, while another person in her same position was permitted to do so; her employer complained of "any small mistake [she] made," and did so loud enough so that Plaintiff could hear; she was accused of not timely forwarding UPCS work reports to Mike Gallo, and for turning invoices in late; "they" made fun of her accent and the way she mispronounced the names of certain streets; she was ridiculed in front of others in meetings; and she was assigned to "[w]hatever work that Mary did not want to do...." (*Id.* at 22).

The NYSDHR issued a letter of Determination and Order After Investigation concluding that the investigation did not reveal sufficient evidence to support a conclusion that Plaintiff was subject to discrimination. (*Id.* at 15–16). Because Plaintiff's charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), the EEOC also issued a Dismissal and Notice of Rights letter adopting the findings of the NYSDHR investigation. (*Id.* at 17).

Plaintiff purports to bring her federal complaint on the basis that Defendant discriminated against her on the basis of her race, sex, and national origin, that she was subjected to sexual harassment, and that she was retaliated against. (*Id.* at 4). Plaintiff alleges that she was subjected to discrimination based on Defendant's failure to promote her, harassment on the

basis of her sex, harassment on the basis of unequal terms and conditions of her employment, and retaliation because she complained of discrimination directed toward her. (*Id.*).

### *PROCEDURAL HISTORY*

█ Plaintiff filed her federal complaint on June 27, 2014. (Dkt. 1). On January 20, 2015, Defendant filed a motion to dismiss Plaintiff's complaint. (Dkt. 7). The Court set a scheduling order for response and reply submissions. (Dkt. 11). On February 18, 2015, instead of filing a response, Plaintiff filed a motion to appoint counsel. (Dkt. 12). The Court denied Plaintiff's motion to appoint counsel without prejudice on February 23, 2015, and set new response/reply submission deadlines for Defendant's motion to dismiss. (Dkt. 13). Plaintiff filed her response in opposition to Defendant's motion to dismiss on March 17, 2015 (Dkt. 14),[2] and Defendant replied on March 23, 2015 (Dkt. 15).

Defendant argues in its motion papers that Plaintiff's response is untimely. (Dkt. 15 at ¶¶ 4–9). Plaintiff's response papers were originally due on February 18, 2015 (Dkt. 11); however, instead of filing a response to Defendant's motion, Plaintiff filed a motion to appoint counsel on February 18, 2015 (Dkt. 12). The Court thereafter denied Plaintiff's motion without prejudice and granted her an extension of time

---

**2.** Plaintiff attaches to her response several documents not referenced or attached to her complaint, including a newspaper article and a purported letter from employees of the RHA. (Dkt. 14 at 4–8). These documents are not attached or referred to in Plaintiff's complaint. "[A] district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference .... [or] "a document upon

which [the complaint] *solely* relies and which is *integral to the complaint.*" *Williams v. Time Warner, Inc.*, 440 Fed.Appx. 7, 8 (2d Cir.2011) (internal quotation marks and citation omitted). The newspaper article and letter do not fit into any of these categories. Accordingly, the Court will not consider them. However, because Plaintiff's complaint specifically contains allegations relating to the NYSDHR investigation, the Court will consider the NYSDHR "Event History With Comment" attached to Plaintiff's response (Dkt. 14 at 9–15).

to file a response to the motion to dismiss until March 16, 2015. (Dkt. 13). Plaintiff filed her response on March 17, 2015 (Dkt. 14), one day after the filing deadline. Because Plaintiff is proceeding *pro se* and Defendant has failed to show that it was prejudiced by the one-day delay, the Court will accept Plaintiff's response. *See Gray v. City of N.Y.*, No. 10–CV–3039 (SLT)(CLP), 2011 WL 3163132, at *3 (E.D.N.Y. July 26, 2011) ("in light of plaintiff's *pro se* status, this Court will give plaintiff the benefit of the doubt and will not strike plaintiff's Opposition Papers, despite the fact that they were served ten days late and without any attempt to extend the Court-imposed deadline").

## DISCUSSION

### I. Legal Standard

" 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir.2009)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984).

### II. Claims Based on Conduct Occurring Prior to January 19, 2013

Defendant argues that the allegations contained in paragraphs 1–38 of Plaintiff's complaint are untimely, as they occurred

more than 300 days prior to her filing an administrative charge with the NYSDHR and EEOC. (Dkt. 9 at 16).

Pursuant to 42 U.S.C. § 2000e–5(e)(1), a plaintiff must file an administrative charge under Title VII within 300 days of the occurrence of a discriminatory act. *Collier v. Boymelgreen Devs.,* No. 06 CV 5425(SJ), 2007 WL 1452915, at *6 (E.D.N.Y. May 17, 2007). This requirement also applies to administrative charges initially filed before the NYSDHR and cross-filed with the EEOC. *Visco v. Brentwood Union Free Sch. Dist.,* 991 F.Supp.2d 426, 433 (E.D.N.Y.2014) ("in New York, a plaintiff typically has 300 days after the alleged discriminatory act to file a charge with either the EEOC or the NYSDHR."); *see also Morales v. City of N.Y. Dep't of Juvenile Justice,* No. 10 Civ. 829(JGK), 2012 WL 180879, at *4 (S.D.N.Y. Jan. 23, 2012) ("The filing of a complaint of discrimination with the NYSDHR is considered to be cross-filed with the EEOC. Therefore, the date of filing with the NYSDHR is the date for filing with the EEOC for purposes of the statute of limitations"). The statutory filing period operates as a statute of limitations; therefore, the failure to file an administrative complaint will bar a plaintiff's action. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996).

According to the allegations in Plaintiff's complaint, the alleged discriminatory treatment began in mid–2010 (Dkt. 1 at 5–7), and continued until April 2014 (*id.* at 13). Plaintiff filed her NYSDHR charge on November 15, 2013. (*Id.* at 19). Accordingly, any alleged discriminatory conduct occurring more than 300 days before November 15, 2013, *i.e.,* before January 19, 2013, must be dismissed on statute of limitations grounds. These allegations comprise the conduct described in paragraphs 1–38 of Plaintiff's complaint, including that Plaintiff was not permitted to work over-

time, she received belittling emails, she was blamed for late invoices and creating inspections, she was not reimbursed for mileage, she was stood up by other employees, and others insinuated that she was stealing. (*Id.* at ¶¶ 1–38).

## A. The Continuing Violation Doctrine

There is an exception to the 300-day statute of limitations where a plaintiff has alleged a continuing violation. "Pursuant to the 'continuing violation' doctrine, a plaintiff may bring an otherwise time-barred discrimination claim where the alleged acts of discrimination occurred pursuant to an ongoing policy of discrimination." *Little v. Nat'l Broadcasting Co.,* 210 F.Supp.2d 330, 336 (S.D.N.Y.2002). " 'A continuing violation may be found where there is proof of specific ongoing discriminatory policies [sic] or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.' " *Id.* (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)); *see also Semper v. N.Y. Methodist Hosp.,* 786 F.Supp.2d 566, 580 (E.D.N.Y.2011). "The continuing violations doctrine is disfavored and courts are hesitant to apply it absent a showing of compelling circumstances." *Predun v. Shoreham–Wading River Sch. Dist.,* 489 F.Supp.2d 223, 228 (E.D.N.Y. 2007).

"A continuing violation may not be premised on discrete incidents of discrimination that are not related to discriminatory policies or mechanisms. Thus, [c]ompleted acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature. Nor can a continuing violation be established merely because the

claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or her employment. Rather the claimant must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Little,* 210 F.Supp.2d at 366 (internal quotations and citations omitted) (alteration in original). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *overruled on other grounds by Greathouse v. JHS Sec. Inc.,* 784 F.3d 105 (2d Cir.2015).

██ Even when construed liberally, Plaintiff's complaint does not contain allegations of discrimination that was part of a continuous practice and policy of discrimination. Rather, Plaintiff alleges conclusory, discrete incidents that are insufficient to amount to a continuing violation. *See Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135, 157 (2d Cir.2012) (discrete acts "which fall outside the limitations period[ ] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."); *Rogers v. Fashion Inst. of Tech.,* No. 14 Civ. 6420(AT), 2016 WL 889590, at *4 (S.D.N.Y. Feb. 26, 2016) ("The acts outlined in the complaint that predate June 15, 2012 are discrete and, therefore, not actionable [under the continuing violation doctrine]"); *see also Martin v. N.Y.S. Dep't of Corr. Servs.,* 224 F.Supp.2d 434, 443–44 (N.D.N.Y.2002) (multiple acts of discrimination are not a continuing violation absent a "constant stream" of similar, allegedly discriminatory conduct).

Plaintiff's complaints occurring before January 19, 2013, that a co-worker made fun of her accent, that her work was criticized, that co-workers insinuated that she was stealing, and that she was not permitted to work overtime, are unrelated to her complaints occurring after January 2013, that her co-workers removed a couch from her office, that she was told to come into work for an employee's birthday while she was on vacation, that a new mail machine with a strong smell was installed in her office, that she did not have enough work to do, that she was transferred to the procurement department, that Harolda Wilcox made the comment "she's fired" outside Plaintiff's office door, and that Daryl Dillon "glared" at her and made comments about her personal life. Further, these incidents involved different co-workers and occurred while Plaintiff worked in distinct departments at the RHA. *See Sullivan v. N.Y.C. Dep't of Investigation,* 163 F.Supp.3d 89, 98, No. 12–cv–2564, 2016 WL 676454, at *5 (S.D.N.Y. Feb. 17, 2016) (no continuing violation where "[a]ny adverse actions involved different supervisory individuals making the decisions"). At best, Plaintiff's allegations are disjointed and unrelated complaints concerning Plaintiff's general dissatisfaction with her work environment, and do not plausibly allege an ongoing policy of discrimination.

## B. Hostile Work Environment

██ Even if the alleged events that pre-date January 19, 2013, could be construed as part of a timely asserted hostile work environment claim, Plaintiff's claims fail because she has not sufficiently alleged a hostile work environment claim. A hostile work environment that is actionable denotes a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ...'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted). A plaintiff pursuing a hostile

work environment claim must "plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race or nationality] . . .'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) (citation omitted). Whether an environment is "abusive" or "hostile" is evaluated based upon all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether the conduct is physically threatening or humiliating, or "a mere offensive utterance"; and (4) whether it "unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. When evaluating a hostile work environment claim, the Court must not "view individual incidents in isolation," or "view the record in piecemeal fashion," but should consider "the totality of the circumstances, viewed from the perspective . . . of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." *Redd v. N.Y.S. Div. of Parole*, 678 F.3d 166, 176 (2d Cir.2012) (internal quotations and citations omitted) (alteration in original). To withstand a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' . . . ." *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.2003)).

Here, the sole allegation made by Plaintiff that could be construed as facially discriminatory is the allegation contained in Plaintiff's administrative charge that her co-workers, mainly Adam Sutherland, made fun of her accent because of "the way [Plaintiff] mispronounced the names of certain streets." (Dkt. 1 at 22). Plaintiff's allegation in this respect is general and unaccompanied by supporting facts, such as when and in what context this conduct occurred. Although Plaintiff's complaint contains allegations that on two instances her co-workers insinuated that she stole property from RHA (*id.* at ¶¶ 27–28), and that another co-worker on one occasion told her he "ate 6 bananas" at an ice cream social (*id.* at ¶ 39), Plaintiff fails to plead that her national origin or race/ethnicity were somehow implicated by these comments.

■ "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir.2006) (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir.2004)). Construing the allegations of the complaint in the light most favorable to Plaintiff, Plaintiff simply has not alleged a plausible hostile work environment. Vague allegations that co-workers made fun of her accent in connection with Plaintiff's pronunciation of streets, with no additional supporting factual information as to the context and frequency of this conduct, as well as the few stray comments made regarding stealing and bananas, do not plausibly allege conduct that is sufficiently severe so as to alter the terms and conditions of Plaintiff's employment.

■ Plaintiff's remaining allegations, which are neutral on their face, do not alter the Court's conclusion. While actions that are neutral on their face can be considered in assessing the totality of the

circumstances for a hostile work environment claim, there must be " 'some circumstantial or other basis for inferring that [such] incidents . . . were in fact discriminatory.' " *Lioi v. N.Y.C. Dep't of Health and Mental Hygiene*, 914 F.Supp.2d 567, 591 (S.D.N.Y.2012) (quoting *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir.2002)). *Cf. Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203–04 (2d Cir.2014) ("The district court should have considered all incidents in their totality—including sex-neutral incidents—before it dismissed [plaintiff's] hostile work environment claims for failure to allege an actionable incident within the applicable statute of limitations.").

Plaintiff's additional allegations, both pre- and post–2013, include that her work was criticized, she was mocked by other employees for reasons unrelated to her race and/or national origin, and she was asked to assist other employees with their jobs. Plaintiff does not allege "any fact to connect [the incident involving her accent] . . . to her other allegations of unfair treatment, which are not facially related to her race." *Fleming v. MaxMara U.S.A., Inc.*, 371 Fed.Appx. 115, 119 (2d Cir.2010) (dismissing hostile work environment claim where there was only one racially harassing comment unconnected to numerous incidents of alleged unfair treatment that were relatively minor in nature, ranging from exclusion from meetings to excessive criticism of work); *see also Raum v. Laidlaw Ltd.*, 173 F.3d 845, 1999 WL 248157, at *2 (2d Cir. Apr. 23, 1999) (while remarks may have been "crass and offensive" they were not predicated on plaintiff's protected classification and therefore were not actionable); *Parekh v. Swissport Cargo Serv., Inc.*, No. CV–0801994 (CPS), 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009) (complaints concerning unfair disciplinary actions and workplace assignments did not contain suggestion of hostility or offensiveness, nor that they were engaged in because of plaintiff's race).

Furthermore, even if Plaintiff's facially-neutral allegations of unfair treatment are considered for purposes of evaluating the hostile work environment claims, taken as a whole, including both timely and untimely allegations, the allegations do not rise to the level of a hostile work environment. In other words, "[n]one of these alleged acts rise objectively to the level of racial hostility." *Murray–Dahnir v. Loews Corp.*, No. 99 CIV, 9057 LMM, 1999 WL 639699, at *4 (S.D.N.Y. Aug. 23, 1999) (claims that plaintiff was compelled to work longer hours, that his performance was criticized, and that his supervisor ceased communicating with him and publicly admonished him, may support a disparate treatment claim, but not a hostile work environment claim). Put simply, Plaintiff's allegations do not plausibly allege a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . ." *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (internal quotations and citations omitted). Rather, Plaintiff's allegations reflect general dissatisfaction with the work environment, consisting mainly of teasing and off-hand comments, but they do not support a discrimination claim for hostile work environment. *See DeSalvo v. Volhard*, 312 Fed.Appx. 394, 397 (2d Cir. 2009) (co-worker's isolated comments that plaintiff was a "goody-goody" and "the holy-holy" did not show an objectively hostile work environment, and other insults concerning work-related issues did not concern her age or religion); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir.2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Mento v. Potter*, 95 Empl. Prac. Dec. (CCH) P44,512, 2012 WL 1908920, at *14–

15 (W.D.N.Y.2012). Plaintiff's "laundry list of inconveniences, disagreements, and arguments, none of which are of the type of severity or persistence necessary to sustain a hostile work environment claim" are insufficient to defeat Defendant's motion for summary judgment. *Id.* at *14.

Finally, even if Plaintiff was able to state a continuing violation based on a hostile work environment claim, she also must allege "a specific basis ... for imputing the conduct that created the hostile environment to the employer." *Van Zant,* 80 F.3d at 715. "To succeed in that endeavor, the plaintiff can demonstrate that a supervisor used his or her authority to further the creation of a discriminatorily abusive working environment, or that the employer knew or reasonably should have known about harassment by non-supervisory co-workers, yet failed to take appropriate remedial action." *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 153 (2d Cir.2014) (internal quotations and citations omitted).

Plaintiff has not alleged that any of the individuals purportedly teasing or mocking Plaintiff were supervisors with the power to effect a significant change in her employment status; rather, it appears that the individuals allegedly harassing Plaintiff were co-workers. In short, Plaintiff's complaint is devoid of any allegations relating to RHA's knowledge of harassing acts taken against Plaintiff or whether the RHA should have known of these acts.

## III. Failure to Exhaust Claims Based on Gender Discrimination and Retaliation

Defendant contends that Plaintiff's claims premised on alleged gender discrimination, sexual harassment, and retaliation must be dismissed because they were not raised in Plaintiff's administrative charge. (Dkt. 9 at 10).

To maintain a timely Title VII claim, a plaintiff must: "(1) file a timely charge with the EEOC, (2) receive an EEOC right-to-sue letter, and (3) file an action within 90 days of receipt of that letter." *Collier,* 2007 WL 1452915, at *2 (citing *Van Zant,* 80 F.3d at 712). Exhaustion of administrative remedies is a "precondition to bringing a Title VII claim in federal court...." *Francis v. City of N.Y.,* 235 F.3d 763, 768 (2d Cir.2000) (internal quotations and citations omitted). This exhaustion requirement applies equally to charges filed before the NYSDHR. *See Wilson–Richardson v. Regional Transit Serv., Inc.,* 948 F.Supp.2d 300, 304–05 (W.D.N.Y.2013); *Falso v. Churchville–Chili Cent. Sch. Dist.,* 547 F.Supp.2d 233, 236–37 (W.D.N.Y.2008), *aff'd,* 328 Fed.Appx. 55 (2d Cir.2009).

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. N.Y. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993), *superseded by statute on other grounds,* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071. As explained by the Second Circuit Court of Appeals in *Ximines v. George Wingate High Sch.,* 516 F.3d 156 (2d Cir. 2008):

This Circuit has recognized that [a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving. The central question is whether the complaint filed with

the EEOC gave that agency adequate notice to investigate discrimination on both bases. The reasonably related exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.

*Id.* at 158 (internal quotations and citations omitted) (alterations in original).

In her administrative charge, Plaintiff maintains that she was discriminated against based on her national origin ("Panama City, Panama") and her race/color or ethnicity ("Black Hispanic"). (Dkt. 1 at 20). The allegations contained in Plaintiff's administrative charge pertain only to these two categories. (*See id.* at 22). Plaintiff's administrative charge is devoid of any allegations relating to or that could be construed as gender discrimination or retaliation, and it does not appear that the NYSDHR investigated any claims relating to gender discrimination, but rather limited its investigation to Plaintiff's race/national origin claims. *See id.* at 15 ("Investigation did not reveal sufficient evidence to support a conclusion that Complainant was unlawfully discriminated against because of her race/color and/or national origin"); Dkt. 14 at 9–15 (no indication that NYSDHR investigation focused on gender discrimination or retaliation claims; rather, the investigation related to any conduct Plaintiff perceived as being race-based).

However, Plaintiff's federal complaint, brought pursuant to Title VII, purports to assert a retaliation claim, as well as discrimination claims based on race, sex, national origin, and sexual harassment. (Dkt. 1 at 4).

Plaintiff's administrative charge does not include any allegations relating to gender discrimination or harassment on the basis of gender. The charge contains no allegations indicating that Plaintiff was treated differently based on her gender, or that sexually-offensive comments were made to her. "Because the Charge cannot reasonably be read to include allegations of gender discrimination, the Charge failed to provide the EEOC with sufficient notice to investigate the gender-based conduct now asserted in the Complaint." *Hoffman v. Williamsville Sch. Dist.*, 443 Fed.Appx. 647, 649 (2d Cir.2011); *see also Grillo v. N.Y.C. Transit Auth.*, 122 F.Supp.2d 385, 391 (E.D.N.Y.2000) ("Because the gender discrimination claim was not included in [the plaintiff's] EEOC charge and gender discrimination claims are not 'reasonably related' to discrimination claims based on race or national origin, the court will dismiss [the plaintiff's] claim of gender discrimination under Title VII."), *aff'd*, 291 F.3d 231 (2d Cir.2002). The NYSDHR did not investigate any conduct by Defendant relating to gender discrimination, and Plaintiff's new gender-based claims bear no "reasonable relationship" to the allegations contained in her NYSDHR charge. Accordingly, any claims based on gender discrimination or sexual harassment are dismissed for Plaintiff's failure to exhaust her administrative remedies.

Similarly, Plaintiff failed to include any allegations pertaining to a retaliation claim, or allegations that could be construed as retaliatory in nature, in her administrative charge. In her opposition papers, Plaintiff claims that although she never filed a written complaint of retaliation with the NYSDHR, she did complain of the same to "DHR Investigator Ugozi Adjaero," and that he encouraged her to file a retaliation complaint as soon as possible. (Dkt. 14 at 1). Plaintiff contends that she "intends to file [a retaliation] ... complaint with the DHR as soon as possible." (*Id.*).

Plaintiff's intention to file a NYSDHR complaint at some time in the future does not cure her previous failure to exhaust this claim. The allegations contained in Plaintiff's NYSDHR charge do not indicate that she engaged in any protected activity or experienced any retaliation, and the charge does not "allege any retaliatory acts or complaints from which a retaliatory motive may be ascribed to [Defendant]." *Fleming v. Verizon N.Y., Inc.*, 419 F.Supp.2d 455, 463 (S.D.N.Y.2005). Further, there is no indication that the NYSDHR investigated any retaliatory conduct on the part of the RHA, nor are there any allegations in Plaintiff's federal complaint that she was retaliated against for filing the NYSDHR charge. Accordingly, Plaintiff's retaliation claim must be dismissed for failure to exhaust her administrative remedies. *See O'Hara v. Memorial Sloan–Kettering Cancer Cent.*, 27 Fed. Appx. 69, 70–71 (2d Cir.2001) (dismissing the plaintiff's retaliation claim for failure to exhaust, because "[t]here must be some factual or legal nexus between the substance of the allegations contained in the administrative charge and the new cause of action," retaliation claim was distinct from the plaintiff's age discrimination claim, and the plaintiff failed to place the EEOC on notice that she had "engaged in the type of protected activity predicate to a retaliation claim."); *Gambrell v. Nat'l R.R. Passenger Corp.*, No. 01 Civ. 6433(NRB), 2003 WL 282182, at *8 (S.D.N.Y. Feb. 3, 2003) ("Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive.").

Finally, the Court notes that to the extent Plaintiff's complaint can be read to allege that she was transferred to the procurement department in retaliation for taking disability leave (Dkt. 1 at ¶ 54), any such claim would fail not only for failure to exhaust, but also because Plaintiff was transferred to the procurement department before taking leave. *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F.Supp.2d 240, 262 (S.D.N.Y.2013) ("[i]t is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity."), *aff'd*, 641 Fed.Appx. 60, No. 13–4071–cv, 2016 WL 860063 (2d Cir. Mar. 7, 2016) (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir.2001)).

## IV. Plaintiff's Remaining Claims

Plaintiff's remaining claims relate to alleged discriminatory conduct directed to Plaintiff because of her race and national origin after January 19, 2013. (*See* Dkt. 1 at ¶¶ 39–55). These include claims that Plaintiff's co-workers removed a couch from her office, that she was told to come into work for an employee's birthday while she was on vacation, a new mail machine with a strong smell was installed in her office, she did not have enough work to do, she was transferred to the procurement department, Harolda Wilcox made the comment "she's fired" outside Plaintiff's office door, and Daryl Dillon "glared" at her and made comments about her personal life. (*Id.*).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Discrimination claims are assessed using the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). To establish a *prima facie* case, a plaintiff must demonstrate: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir.2009). If a plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse act]." *Id.* at 498–99 (internal quotations and citation omitted) (alteration in original). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir.2010). In other words, the plaintiff must "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Leibowitz*, 584 F.3d at 499 (internal quotations and citation omitted).

The Second Circuit Court of Appeals recently clarified that, at the motion to dismiss stage, a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*. Rather, a plaintiff " 'need only give plausible support to a minimal inference of discriminatory motivation.' " *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir.2015) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306, 311 (2d Cir.2015)).

Defendant concedes that Plaintiff has met the first and second prongs of a *prima facie* case of discrimination, *i.e.*, that she is a member of a protected class and she was qualified for her position. (Dkt. 9 at 20). Defendant argues that Plaintiff has failed to allege an adverse employment action or plead a minimal inference of discrimination. (*Id.* at 20, 22).

### A. No Adverse Employment Action

■■■■ For purposes of a claim for discrimination under Title VII, "a plaintiff may suffer an 'adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.' " *Richardson v. N.Y.S. Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999) (citations omitted), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). To qualify as materially adverse, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir.2012) (internal quotations and citation omitted). " 'Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.' " *Sethi v. Narod*, 12 F.Supp.3d 505, 523 (E.D.N.Y. 2014) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir.2004)).

■■■ There are no "bright-line rules" as to what constitutes an adverse employment action, and Title VII "does not define adverse employment action solely in terms of job termination or reduced wages and benefits ..." *Richardson*, 180 F.3d at 446 (internal quotations and citations omitted). As a result, "courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.' " *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997).

For example, "simply being assigned undesirable work duties ... [is] insufficient to establish an adverse employment action, since [it does] not have a material impact

on the terms and conditions of plaintiff's employment." *Castro v. City of N.Y.*, 24 F.Supp.3d 250, 264 (E.D.N.Y.2014) (internal quotations and citation omitted) (alterations in original). On the other hand, "[a]n internal transfer can constitute an adverse employment action if 'accompanied by a negative change in the terms and conditions of employment,' ... or 'if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career.'" *Lewis v. N.Y.C. Transit Auth.*, 12 F.Supp.3d 418, 439–40 (E.D.N.Y.2014) (quoting *Terry v. Ashcroft*, 336 F.3d at 144, and *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir.2000)).

 As a further example, "[c]riticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action." *Dimitracopoulos v. City of N.Y.*, 26 F.Supp.3d 200, 214 (E.D.N.Y.2014) (quoting *Weeks v. N.Y.S. Div. of Parole*, 273 F.3d 76, 86 (2d Cir.2001)). "A thin-skinned worker's reaction to criticism by a supervisor will not support a claim of ... discrimination unless it is outside the bounds of appropriate supervision...." *Id.* Likewise, "the threat of disciplinary action, without more, does not constitute an adverse employment action." *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F.Supp.3d 396, 407 (S.D.N.Y.2014) (alleged manufacturing of charges against plaintiff did not constitute adverse employment action, where there was no allegation that it impacted terms and conditions of employment). Further, without more, unprofessional or boorish behavior does not amount to an adverse employment action. *Sethi*, 12 F.Supp.3d at 527–28 (adverse employment action not found where president of company "charged, slapped and 'chested'" plaintiff at a meeting and used derogatory and offensive language).

 Plaintiff's allegations relating to criticism of her work, comments made by her coworkers, requests to help with other employees' work on occasion, not having enough work, and generalized allegations that she was asked to complete "new tasks," do not rise to the level of an adverse employment action. The only allegation contained in Plaintiff's complaint post-dating January 19, 2013, that potentially even involves a change in the terms and conditions of Plaintiff's employment is her allegation that she was transferred to the procurement department. Plaintiff alleges in her complaint that she was transferred to the procurement department in September 2013, and her complaint indicates that she was unhappy with her transfer. (*See* Dkt. 1 at ¶ 50) ("October 2013, met w/ Anne Wambach ... to dismiss concerns w/ being transferred to the Procurement Dept. and the reasons behind it")).

 However, aside from indicating her general dissatisfaction with the transfer, Plaintiff makes no allegations that the new position in the procurement department was a demotion, that it changed the terms and conditions of employment, that she experienced a loss of benefits or title, that her work hours were affected, or that her wages were decreased. In other words, Plaintiff has failed to plead facts plausibly supporting that her transfer was an adverse employment action. Where the allegedly adverse action is an involuntary transfer, "the key inquiry ... is whether the transfer constitutes a negative employment action tantamount to a demotion." *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F.Supp.2d 599, 617 (S.D.N.Y.2009). Plaintiff has not provided any information in her complaint to support such a conclusion.

**B. No Minimal Inference of Discrimination**

 "No one particular type of proof is required to [allege] that Plaintiff's

termination occurred under circumstances giving rise to an inference of discrimination." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11–CV–3625 (MKB), 2013 WL 3968748, at *6 (July 30, 2013) (internal quotations and citation omitted). At the motion to dismiss stage, "[an allegation] of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir.2003) (citation omitted). Further, "[a]llegations of discriminatory comments directed at the plaintiff's [protected] group are a recognized method of establishing discriminatory intent." *Henry*, 18 F.Supp.3d at 408; *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.2001) (inference of discrimination may be raised by "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]"); *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996) ("circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus"). Conversely, "a plaintiff's mere subjective belief that he was discriminated against . . . does not sustain a . . . discrimination claim." *Sethi*, 12 F.Supp.3d at 536 (internal quotations and citation omitted).

■ Even if the transfer to the procurement department did constitute an adverse employment action, Plaintiff has failed to meet her pleading burden of supporting an inference of discriminatory intent, because her claims are not supported by anything other her own conclusory assertions that she was discriminated against on the basis of her race and national origin. Plaintiff has failed to plausibly plead a minimal inference of discriminatory motivation. In other words, Plaintiff has not provided any allegations that are racially-discriminatory on their face, nor has she provided any allegations that would raise the logical inference that she was being discriminated against; *i.e.*, allegations that other similarly-situated employees were treated better than her. *See Henry*, 18 F.Supp.3d at 408 (dismissing plaintiff's claim for race discrimination because she failed to plead discriminatory intent, as the complaint "lack[ed] any factual basis from which one could infer that any Caucasian employee similarly situated to Henry was subject to differential treatment," and the plaintiff's "generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to " 'nudge [ ][her] claims across the line from conceivable to plausible' ") (citation omitted) (alterations in original); *Avgerinos v. Palmyra–Macedon Cent. Sch. Dist.*, 690 F.Supp.2d 115, 130 (W.D.N.Y.2010) (plaintiff failed to plead inference of discrimination where complaint did not contain allegations that any member of the school district made discriminatory comments relating to plaintiff regarding his age, engaged in overt discriminatory conduct due to his age, older applicants were denied appointments, or that only younger workers were employed). In fact, Plaintiff alleges that she was transferred to the procurement department after layoffs (Dkt. 1 at ¶ 48), thus suggesting that Plaintiff was actually treated more favorably than other employees who were laid off. Accordingly, Plaintiff has failed to allege facts supporting an inference of discrimination, and her complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted, and Plaintiff's complaint is dismissed in its entirety. The Clerk of Court is directed to close the case.

SO ORDERED.